IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS - HOUSTON DIVISION

| | |
|---|---|
| XEBEC, INC § § **Plaintiff,** § § v. § § UNITED SUPPLY ALLIANCE, INC. § § **Defendant.** § § | Civil Action No.: <u>4:25-cv-6094</u> JURY TRIAL DEMANDED |

### PLAINTIFF XEBEC, INC.'S ORIGINAL COMPLAINT

COMES NOW Plaintiff XEBEC INC. ("XEBEC") complains of DEFENDANT UNITED SUPPLY ALLIANCE, INC. ("DEFENDANT") for infringement of its registered patent under the United States Patent Act, and states as follows:

### PRELIMINARY STATEMENT

1.  XEBEC brings the following claims against DEFENDANT for (1) direct and induced infringement and of U.S. Patent No. 9,395,757 ("the '757 Patent").

2.  XEBEC's claims arise from DEFENDANT's unlawful and infringing conduct relating to XEBEC's patented auxiliary screen mounting systems. Specifically, DEFENDANT has willfully infringed the '757 Patent by manufacturing, importing, marketing, offering for sale, and selling unauthorized auxiliary screen mounting systems that directly compete with XEBEC's innovative products. DEFENDANT has further engaged in acts of inducement of infringement by encouraging third parties to sell and distribute these infringing products within the United States.

3.  XEBEC seeks injunctive relief, damages—including enhanced damages for willful infringement—attorneys' fees, and all other remedies available under the law. Given the intentional nature of DEFENDANT's conduct, XEBEC further requests that this Court declare this

an exceptional case under 35 U.S.C. § 285 and award all costs and reasonable attorneys' fees incurred in enforcing its intellectual property rights.

## JURISDICTION AND VENUE

4. These counterclaims for patent infringement arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq*. XEBEC seeks injunctive relief, damages, and recovery of its reasonable costs and attorneys' fees.

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338, because XEBEC's claims include causes of action for patent infringement under the patent laws of the United States, including but not limited to, 35 U.S.C. §§ 271, 281, 283–285, and 287.

6. This Court has personal jurisdiction over DEFENDANT because it has transacted business in this District, has derived substantial revenue from the infringing auxiliary screen mounting systems offered for sale and/or sold in this District, and/or has established sufficient minimum contacts with the State of Texas such that they are subject to the personal jurisdiction of this Court. Personal jurisdiction in Texas over DEFENDANT is also consistent with the requirements of due process.

7. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b) based on the facts alleged in the preceding and subsequent paragraphs, which XEBEC incorporates by reference as if fully set forth herein.

## PARTIES

8. XEBEC is a company organized and existing under the laws of the State of Delaware, having a principal place of business at 2400 E. Cesar Chavez #206, Austin, Texas 78702.

9. DEFENDANT is a company organized and existing under the laws of the State of California, having a principal place of business at 1565 Creek St., Ste. 105, San Marcos, California 92078. DEFENDANT may be served with process through its President and Registered Agent, Nathaniel Ong Pajarillo, located at 1565 Creek St., Ste. 105, San Marcos, California 92078.

## FACTUAL BACKGROUND

10. XEBEC incorporates by reference the allegations contained in paragraphs 1-9, as if fully set forth herein.

11. Headquartered in Austin, Texas, XEBEC is an innovative provider of mobile workplace technology such as its Xebec Tri-Screen 2 and Xebec Tri-Screen 3 laptop screen extender devices.

12. XEBEC was founded in 2018 by Alex Levine and Trevor Russo with the mission to equip individuals to be successful in the modern mobile workplace.

13. XEBEC's most successful and innovative product is the Xebec Tri-Screen, which is an auxiliary screen mounting system that adds two additional screens to any laptop or computing device to create an instant remote-office set up. An example of XEBEC's innovative Tri-Screen product is shown below:



14.     The inspiration for the Xebec Tri-Screen design stemmed from Alex Levine's role as a corporate consultant. As a consultant Levine regularly traveled to client sites across the country. In that role, he found that it was difficult to maintain efficiency and productivity while working on a laptop having a single screen.

15.     Although Levine attempted to maintain efficiency and productivity by using external stand-alone monitors, he found that they took too much time to set up and lacked the portability to be easily moved from room to room. He also found that external stand-alone monitors required additional desk space that was often difficult to come by in hotel rooms, at client sites, and in other temporary work locations.

16.     As a result, Levine began designing and developing a solution that would give remote and traveling workers access to additional screens. His invention utilized a removable mount that would affix to a laptop or other computing device seamlessly without causing damage. His design resulted in a solution that was easy to travel with, quick and painless to set up, and required minimal additional workspace.

17.     Based on Levine's design, Levine and Russo launched XEBEC and introduced the first generation of the innovative Xebec Tri-Screen. The Tri-Screen is XEBEC's most popular

product and at the core of XEBEC's business. XEBEC has spent substantial time and resources designing, developing, and bringing this innovative product to the market. XEBEC has continued to spend substantial time and resources to further innovate on their original idea, launching the third-generation Xebec Tri-Screen 3 on June 3, 2025.

18. On January 7, 2022, XEBEC acquired additional patent rights in the mobile workplace technology field from Dovetail Technology Ltd. ("Dovetail Technology"), a company based in the United Kingdom. These additional patent rights include U.S. Patent No. 9,395,757 ("the '757 Patent").

19. The '757 Patent, entitled "Auxiliary Screen Mounting System," was filed on November 18, 2014 and, after a full and fair examination, was duly and legally issued by the PTO on July 19, 2016. A true and correct copy of the originally issued '757 Patent is attached hereto as Exhibit A.

20. On November 1, 2022, a request for *ex parte* reexamination of claims 1–7, 10–13, 15–17 of the '757 Patent was filed by a competitor of XEBEC and, subsequently, an order granting the request for *ex parte* reexamination was granted on November 18, 2022.

21. One or more of the prior art references either raised by the request or that were ultimately at issue in the *ex parte* reexamination include: U.S. Patent Pub. No. 2011/0155868 to Sun et al.; U.S. Patent No. 9,153,112 to Massi et al.; U.S. Patent No. 5,035,392 to Gross et al.; and U.S. Patent No. 6,532,146 to Duquette.

22. After a full and fair examination, the PTO issued an *Ex Parte* Reexamination Certificate for the '757 Patent on September 5, 2023. A true and correct copy of the Ex Parte Reexamination Certificate for the '757 Patent is attached as Exhibit B.

23. XEBEC is the owner of all right, title, and interest in and to the '757 Patent by

assignment from Dovetail Technology, including the right to make, use, offer for sale, sell, import, enforce, and seek and collect past damages. A true and correct copy of the assignment from Dovetail Technology to XEBEC is attached hereto as Exhibit C.

24. On or about April 3, 2025, Chief Warrant Officer and Division Director of U.S. Navy Recruiting Command ("NRC") Joshua Carmack contacted XEBEC to inquire about acquiring the Xebec Tri-Screen 2. XEBEC notified Officer Carmack that the Xebec Tri-Screen 2 was no longer in production and suggested that he purchase the new Xebec Tri-Screen 3.

25. On April 4, 2025, Officer Carmack sent the following email, noting that his group was actively researching "tri-folder monitor solutions" for NRC staff operating in the field, and provided some of the specific requirements of the NRC for such a device:

> On Fri, Apr 4, 2025 at 12:55 PM Carmack, Joshua G CWO-3 USN COMNAVCRUITCOM MIL (USA) <joshua.g.carmack.mil@us.navy.mil> wrote:
>
>> Lizet,
>>
>> Apologies for the delay in sending this, our team has been actively exploring tri-folder monitor solutions for our recruiters in the field. We'd be happy to join a call on Monday to further discuss the TriScreen 3 as a potential option for NRC.
>>
>> As mentioned, the monitors must support HDMI and USB-C connectivity. Additionally, installing third-party drivers is not permitted on our government systems, so we are specifically looking for a plug-and-play, portable solution that integrates seamlessly. \
>>
>> NRC Laptop Model: Elitebook 645 G10 Notebook PC.
>>
>> v/r
>>
>> CWO3 Carmack, Joshua
>>
>> Navy Recruiting Command

26. On Monday, April 7, 2025, XEBEC representatives met with Officer Carmack to discuss the NRC's requirements and the Xebec Tri-Screen 3 further. Following that meeting, XEBEC sent Officer Carmack a review unit of the Xebec Tri-Screen 3.

27. On April 10, 2025, XEBEC representatives met again with Officer Carmack and his colleagues after the Xebec Tri-Screen 3 review unit arrived. During the meeting, representatives of the NRC discussed ordering several units for NRC staff and requested XEBEC provide "sole source" documentation to the NRC for consideration.

28. Pursuant to 10 U.S.C. § 2304(c), the government may contract with a vendor without providing full and open competition if they are able to demonstrate that sole source procurement is necessary because, for example, there is only one responsible source.

29. XEBEC provided Officer Carmack the requested sole source documentation on April 10, 2025, which included a product description of the Xebec Tri-Screen 3 and an explanation that no other competitors offers the same combination of features as the Xebec Tri-Screen 3, thus justifying the sole source procurement. A true and correct copy of the Sole Source Verification provided by XEBEC to Officer Carmack is attached hereto as Exhibit D.

30. On April 26, 2025, Officer Carmack sent an email to XEBEC stating that he was prepared to return the review unit of the Xebec Tri-Screen 3 and notified XEBEC that the unit was helpful to share with leadership at the NRC.

31. On May 19, 2025, Levine contacted Officer Carmack to check to see if the NRC required anything further to place an order for the Xebec Tri-Screen 3.

32. On May 21, 2025, Officer Carmack confirmed that the NRC had sought approval for the Tri-Screen 3 through the sole source procurement process:

> On Wed, May 21, 2025 at 11:07 AM Carmack, Joshua G CWO-3 USN COMNAVCRUITCOM MIL (USA) <joshua.g.carmack.mil@us.navy.mil> wrote:
>
>> Alex,
>>
>> Everything is in order on our end, we're currently waiting for the approval and supply process to finalize. I'll keep you updated as soon as we receive any feedback. Since this is a sole source procurement, we're hopeful the process will go smoothly.
>>
>> v/r
>>
>> CWO3 Carmack, Joshua
>>
>> Navy Recruiting Command

33. On June 2, 2025, Officer Carmack notified XEBEC that "big Navy" required a further description of the unique features of the Xebec Tri-Screen 3 to authorize sole source procurement. Officer Carmack specifically noted that the single-cable connection was one such differentiator by way of example. Officer Carmack requested additional materials to "strengthen our case for sole source procurement" as detailed in the email below:

> On Mon, Jun 2, 2025 at 3:23 PM Carmack, Joshua G CWO-3 USN COMNAVCRUITCOM MIL (USA) <joshua.g.carmack.mil@us.navy.mil> wrote:
>
>> Alex/Lizet,
>>
>> We've reached the stage where big Navy is reviewing the sole source justification for the Xebec Tri-Fold. To support this, I need to provide three unique features that set the Xebec Tri-Fold apart from other products on the market. One key differentiator we've identified is the single-cable connection that delivers both video and power to the Tri-Fold monitors a capability that aligns perfectly with our operational requirement. Additionally, the ease of use and overall durability are critical advantages. Could you please elaborate on these features and provide any additional differentiators that would help strengthen our case for sole source procurement?
>>
>> If you have a pamphlet or brochure for the Tri-Fold, please attach it as well.
>>
>> Standing by for any questions or concerns.
>>
>> v/r
>>
>> CWO3 Carmack, Joshua
>>
>> Navy Recruiting Command

34. Later that day, Levine shared a description, provided below, of specific technical information of the Xebec Tri-Screen 3 to Officer Carmack and other members of the NRC. Among the technical details and the description was the technology described by the '757 patent:

**Sole Source Three Key Features:**

1. **Single cable connection.** The Tri-Screen 3 is the <u>only plug-and-play Tri-Screen with a single embedded USB-C cable</u>. Just connect one cable to your laptop and go. No setup headaches, no more digging for the right cables, no separate power cable required! Instantly add two extra screens to your laptop with one seamless connection. This streamlined design enhances user experience and minimizes desktop clutter, which is particularly valuable for field or mobile work environments.
2. **Patented Removable Attachment.** Xebec incorporates patented technology (U.S. Patent No. US9395757 and US10809762B1) that allows the screens to securely attach to the back of a laptop using tension alone — without any need for adhesives, glue, or magnets. This unique mechanical design allows for fast attachment and detachment while maintaining laptop portability and integrity. Simply expand the Tri-Screen 3 frame to mount it on the back of your laptop screen.
3. **Extra-wide aluminum kickstand.** The Tri-Screen 3's built-in aluminum kickstand has 10x more contact points than any other portable workstations on the market. This delivers unmatched stability and strength, giving your laptop a sturdy foundation wherever you work. Crafted from durable aluminum, it protects your laptop's hinges from strain and wear while holding your screens steady on any surface, from your office desk to your lap while sitting on a chair.

35. On June 3, 2025, at the request of Officer Carmack, Levine provided a brochure and technical specification for the Xebec Tri-Screen 3.

36. On June 5, 2025, Officer Carmack requested a timeline for XEBEC to ship 1,000 units of the Xebec Tri-Screen 3. Levine informed Officer Carmack that it would take approximately fourteen (14) days to get the first shipment out. Later that day, Officer Carmack stated that, rather than be released as a sole source procurement, the NRC's requirement for a tri-screen foldable laptop monitor extender would be released as a competitive bid through SAM.gov.

37. On July 10, 2025, NAVSUP FLC published Solicitation N0018925QZ375 titled "7E21 – Tri-Fold Screen Extenders" (the "NRC RFQ"). The due date to submit offers for the NRC RFQ was July 28, 2025. The NRC RFQ included the following specifications (hereinafter the "Specifications"):

Specifications

| Description | Specification |
|---|---|
| Display Size | Two (2) individual screens, each between 13"-13.5" diagonal |
| Weight | 4 lbs or less (entire system including built-in cable and stand) |
| Supported Laptop Size | Compatible with 14" laptops, resulting in each of the screens physically attached left and right of the laptop screen |
| Resolution | 1920 x 1080 (Full HD) |
| Refresh Rate | 60Hz |
| Panel Type | LCD IPS |
| Screen Rotation | Must support at least 270° rotation for presentation mode |
| Connectivity | Single embedded USB-C cable that provides both video and power to both screens |
| Compatibility | Must be compatible with Windows 10 and 11-based laptops featuring USB-C with DP Alt Mode |
| Mounting Method | Must not require magnets, adhesives, or modification to laptop |
| Travel Case | Padded protective travel case must be included |
| Setup Time | Device must support tool-free installation and be operational in under 15 sec |
| Kickstand Requirement | Integrated adjustable stand must support final configuration and keep device from tipping while allowing slight angle adjustment |
| Demo Unit Requirement | Vendor must provide a demo unit within 7 calendar days of contract award. The evaluation period at Navy Recruiting Command (NRC) will not exceed 14 days, after which the unit will be returned. |
| Production and Delivery Capacity | Initial delivery of 1,000 units within 14 calendar days of contract award. Remaining 4,000 units delivered no later than 90 calendar days from contract award. |
| Delivery | Must include drop shipping to 33 locations |

38. These Specifications included specific contract requirements discussed by and between XEBEC and the NRC, including the number of units, the fourteen (14) day delivery window, and the sole source descriptors described by Officer Carmack, Levine, and XEBEC's technical specifications for the Xebec Tri-Screen 3.

39. More importantly, the NRC RFQ Specification expressly requires technology protected by the '757 patent, namely, a mounting method that does not require tools, magnets, adhesives, or modification to the laptop and results in each of the two screens being physically attached to the left and right of the laptop screen.

40. XEBEC submitted its bid prior to the July 28, 2025 deadline.

41. On September 15, 2025, XEBEC learned through communication from the NRC RFQ Administrative Contact Bonnie Morris and through SAM.gov that DEFENDANT was awarded the contract with the NRC for tri-fold screen extenders. DEFENDANT is required to deliver one thousand (1,000) "tri-fold screen extenders" that meet the Specifications (the "Accused Products") to the NAVSUP Fleet Logistics Center in Philadelphia, PA on or before September 26, 2025.

42. DEFENDANT is a products and equipment broker that buys goods from manufacturers and sells them to the government agencies. Since 2019, DEFENDANT has been awarded one hundred twenty-nine (129) contracts with government agencies totaling at least $4.1 Million USD.

43. Unlike XEBEC, DEFENDANT is not a technology company. Instead it brokers and imports and then resells to the government a variety of goods, including medical supplies, office equipment and supplies, tactical gear, and tools.

44. DEFENDANT is not a licensee of XEBEC and has never sought to license the '757 patent.

45. In connection with the NRC RFQ award, DEFENDANT offered to sell one or more infringing auxiliary screen mounting systems to the NRC.

46. In connection with the NRC RFQ award, DEFENDANT has sold one or more infringing auxiliary screen mounting systems to the NRC.

47. In connection with the NRC RFQ award, DEFENDANT has imported one or more infringing auxiliary screen mounting systems into the United States.

48. In connection with the NRC RFQ award, DEFENDANT has transported one or

more infringing auxiliary screen mounting systems in interstate commerce.

<u>COUNT I: INFRINGEMENT OF '757 PATENT, 35 U.S.C. § 271(a)</u>

49. XEBEC incorporates by reference the allegations contained in paragraphs 1–48, as if fully set forth herein.

50. DEFENDANT's ongoing use, assembly, offer for sale, sale, resale, importation, and/or transfer of one or more of the Accused Products infringes one or more claims of the '757 Patent.

51. DEFENDANT directly and/or contributorily infringes, literally or under the doctrine of equivalents, at least Claim 1 of the '757 Patent by, without authority, making, using, importing, selling, and/or offering to sell one or more of the Accused Products within the United States in violation of 35 U.S.C. § 271(a).

52. A preliminary claim chart showing DEFENDANT's infringement of Claim 1 of the '757 Patent is attached hereto as Exhibit E.

53. For example, a summary of DEFENDANT's infringement of Claim 1 of the '757 Patent by reference to the Specifications is provided as follows:

    i. <u>Preamble</u>: The Specification requires an auxiliary screen support system for a computing device;

    ii. <u>Limitation 1</u>: The Specification requires a plurality of mounting members arranged to be disposed on opposing lateral sides of the computing device in use;

    iii. <u>Limitation 2</u>: The Specification requires a retaining member that extends between the plurality of mounting members, and is configured to hold the plurality of mounting members relative to the opposing lateral sides of the computing device;

    iv. <u>Limitation 3</u>: The Specification requires at least one mounting member that

        is configured to bear an auxiliary screen that is hung relative to the computing device; and,

    v.    <u>Limitation 4</u>: The Specification requires a retaining member that is length adjustable to hold the plurality of mounting members relative to the opposing lateral sides of the computing device by resisting separation.

54.    As a result of DEFENDANT's infringement of the '757 Patent, XEBEC has been damaged and will continue to be damaged by DEFENDANT's unlawful conduct. XEBEC is entitled to recover damages pursuant to 28 U.S.C. § 284 adequate to compensate it for DEFENDANT's infringing activities in an amount to be determined at trial, but in no event less than a reasonable royalty.

55.    DEFENDANT's infringement of the '757 Patent has injured and continues to injure XEBEC and will continue to cause irreparable harm to XEBEC unless DEFENDANT is enjoined from infringing one or more claims of the '757 Patent. XEBEC is entitled to preliminary and/or permanent injunctive relief against DEFENDANT from further infringement pursuant to 28 U.S.C. § 283.

56.    DEFENDANT's infringement of the '757 Patent has been deliberate and willful, which warrants an award of treble damages and attorneys' fees to XEBEC pursuant to 28 U.S.C. §§ 284 & 285.

## JURY DEMAND

XEBEC hereby respectfully requests a trial by jury on all issues raised in this case, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF XEBEC INC. prays that this Court enter judgment in

favor of XEBEC and against DEFENDANT as follows:

    A.    Entry of judgment that DEFENDANT has directly and/or contributorily infringed the '757 Patent pursuant to 35 U.S.C. § 271 (a), as XEBEC may prove to a trier of fact;

    B.    Entry of judgment that DEFENDANT has induced infringement of the '757 Patent pursuant to 35 U.S.C. § 271 (a), as XEBEC may prove to a trier of fact;

    C.    An order preliminarily and/or permanently enjoining DEFENDANT, and its agents, servants, officers, directors, employees, attorneys, affiliated companies, successors-in-interest, and all those in active concert or participation with them, and all other parties properly enjoined by law, from infringing the claims of the '757 Patent;

    D.    An order that DEFENDANT be ordered to file with this Court, and to promptly serve on counsel for XEBEC, within twenty (20) days after entry of any injunction issued by the Court in this action, a sworn statement setting forth in detail the manner and form in which it has complied with the injunction;

    E.    An order that DEFENDANT provide an accounting and pay to XEBEC damages in an amount adequate to compensate XEBEC for DEFENDANT's infringement of the '757 Patent, including damages for lost profits, but in no event less than a reasonable royalty, including up to treble damages for DEFENDANT's willful infringement pursuant to 35 U.S.C. § 284;

    F.    An order that this is an exceptional case under 35 U.S.C. § 285 meriting that XEBEC be awarded its costs, including its reasonable attorneys' fees and other expenses incurred in connection with this action;

      G.      Any other relief that the Court finds legal, just and equitable, as may be available under law or equity, and which the Court finds proper.

Date: <u>December 17, 2025</u>

Respectfully submitted,

By: <u>/s/ Justen S. Barks</u>
Justen S. Barks
SDTX No. 2295553
Jbarks@barks.law
Blake D. Stovall
SDTX No. 3922056
bstovall@barks.law
Daria Adler
SDTX No. 3865566
dadler@barks.law
**BARKS PLLC**
1235 N. Loop West, Ste. 702
Houston, Texas 77008
(832) 416-1642 (Tel.)

**ATTORNEYS FOR XEBEC, INC.**